UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RASHEEN GIRAUD,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:20-cv-1124 (SRU) |
| | : |
| DR. INGRID FEDER, ET AL.,<br>    Defendants. | :<br>: |

**INITIAL REVIEW ORDER**

Rasheen Giraud, currently incarcerated at Cheshire Correctional, brings this complaint under 42 U.S.C. § 1983 against various officials associated with the Connecticut Department of Correction ("DOC") including: Dr. Ingrid Feder, Nurse Janine Brennan and Warden Martin. For the reasons set forth below, the complaint is dismissed in part.

**I.     Standard of Review**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. That standard of review "applies to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid a filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (citation omitted).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90. 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     Factual Allegations

On February 15, 2020, Giraud injured his right leg playing basketball. Compl. Doc. No. 1 at ¶ 1. Following the injury, he immediately began to experience pain through his right calf and into his ankle. *Id.* After returning to his housing unit, Giraud asked a lieutenant to call the medical department on his behalf. *Id.* ¶ 2. The medical department advised Giraud to submit a written request to be seen, which he did. *Id.*

Giraud's leg continued to worsen throughout the day on February 15, 2020, becoming increasingly swollen. *Id.* at ¶ 3. When he tried to move his foot, he experienced excruciating pain. *Id.* ¶ 3. Giraud received a response from the medical department on February 16, 2020 confirming that he had been placed on the sick call list. *Id.* ¶ 4.

On February 19, 2020, when he had still not been seen by a medical provider, Giraud submitted another request for an appointment. *Id.* at ¶ 5. Giraud received a reply to that request on February 20, 2020 merely confirming again that he was on the sick call list. *Id.* at ¶ 6. He was subsequently seen by a nurse, who told him there was nothing seriously wrong with his leg and that the swelling would subside. *Id.* at ¶ 7. She also gave him ibuprofen for the pain; however, the ibuprofen had no effect on the pain or swelling. *Id.*

On February 26, 2020, Giraud submitted a new request to be seen by a medical provider

because the swelling in his leg had not subsided and he was still experiencing severe pain. *Id.* ¶ 8. On February 28, 2020, Giraud received a response to his request by a medical provider indicating that he had again been placed on the sick call list. *Id.* A medical provider subsequently examined Giraud and gave him more ibuprofen for pain. *Id.* ¶ 9. The ibuprofen did not address the pain or swelling, and Giraud additionally developed a small bump on his leg. *Id.* at ¶ 9. He again sought treatment from the medical department and was told by a medical provider that he would be scheduled for an MRI. *Id.*

On March 25, 2020, Giraud followed up again requesting an appointment with a medical provider because he had not been scheduled for an MRI, the bump was still present on his right leg and the prescription for ibuprofen was not alleviating his pain. *Id.* ¶ 10. He received a response to his request indicating that he had again been placed on the sick call list. *Id.* On May 7, 2020, Giraud submitted another request to be seen by a medical provider because his symptoms had not abated. *Id.* at ¶ 12. On May 10, 2020, Giraud received a response to his request by a medical provider indicating that he had been placed on the sick call list. *Id.*

On May 20, 2020, Giraud received a notice from Dr. Feder reporting that X-Rays taken of his right leg reflected no injury requiring medical intervention. *Id.* ¶¶ 13-14. On May 22, 2020, Giraud submitted a request to the medical department indicating that Dr. Feder had misdiagnosed his injury and that an MRI was necessary in order to determine the problem. *Id.* ¶ 14. Giraud described the pain and swelling he was still experiencing, as well as his difficulty walking. *Id.* at ¶ 14. In response to his request, a medical provider placed him on the sick call list. *Id.*

On May 29, 2020, Giraud received a second notification from Dr. Feder reporting that X-

Rays taken of his right leg reflected no injury requiring medical intervention. *Id.* at ¶ 15. On June 12, 2020, Giraud received another notice from Dr. Feder stating that she had changed her diagnosis and now suspected that Giraud had torn a muscle or a tendon in his right leg. *Id.* at ¶ 16.  She informed Giraud that she had submitted a request seeking authorization for Giraud to receive an MRI and be examined by an orthopedist. *Id.* She also prescribed him Gabapentin for possible nerve damage in his leg. *Id.*

On June 29, 2020, when he had still not been scheduled for an MRI, Giraud filed administrative remedy form regarding the 4 ½ month delay in treatment. *Id.* ¶ 17. On July 23, 2020, Nurse Brennan returned Giraud's administrative remedy form without disposition, indicating that his complaint did not raise a proper diagnosis or treatment issue but instead pertained to the wait time for an MRI. *Id.* at ¶ 18.

On July 22, 2020, Giraud sent a request to the medical department about the delay in adequate treatment and the constant pain he was still experiencing in his right leg. *Id.* at ¶ 19. He did not receive a reply. *Id.*

**III.    Discussion**

Giraud contends that the defendants were deliberately indifferent to the serious injury to his right leg in violation of the Eighth Amendment of the United States Constitution and Article First Section 9 of the Connecticut Constitution while he was incarcerated at Corrigan-Radgowski Correctional Center ("Corrigan") in 2020.  He seeks compensatory and punitive damages, as well as injunctive relief.

    **1. Section 1983 Claims**

        **A.    Eleventh Amendment**

4

Giraud does not indicate whether his claims are brought against the defendants in their official or individual capacities. Because Giraud seeks both injunctive relief and monetary damages, I assume that Giraud sues the defendants in both their official and individual capacities.

It is well settled that the Eleventh Amendment bars suits for money damages against state officials acting in their official capacities. See *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court...[t]his bar remains in effect when state officials are sued for damages in their official capacity"); *see also Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). The Eleventh Amendment does not, however, bar suits for money damages against state officials acting in their individual capacities, even if the acts complained of occurred in the course of their official duties. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Under the doctrine of *Ex Parte Young*, state officers may additionally be sued in their official capacities so long as a plaintiff seeks prospective injunctive relief for violations of constitutional rights or federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *see also CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002).

To the extent that Giraud seeks monetary damages against the defendants in their official capacities for violations of the Eighth Amendment, that request is barred by the Eleventh Amendment and is dismissed. *See* 28 U.S.C. § 1915A(b)(2). However, his request for monetary

damages from officials sued in their individual capacities and for injunctive relief from officials sued in an official capacity may proceed consistent with the Eleventh Amendment.[1]

### B. Eighth Amendment

Giraud claims that the defendants were deliberately indifferent to his serious medical needs by failing to adequately treat his leg condition.

The Eighth Amendment's ban on cruel and unusual punishment has been interpreted to prohibit deliberate indifference to an incarcerated individual's serious medical needs by medical providers and prison officials. *See Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976) (deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). To establish that a medical provider or prison official behaved with deliberate indifference, a plaintiff must allege both the existence of a "sufficiently serious" medical need and additionally that in delaying or denying care for that need, the charged official acted with a sufficiently culpable mental state. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). The requirement that a plaintiff's condition be sufficiently serious is often referred to as the objective component of a claim for deliberate indifference, while allegations that the official possessed the requisite mental state are described as the subjective component. *Brock v Wright*, 315 F.3d 158, 162, 164 (2d Cir. 2003).

To determine whether a plaintiff has alleged a "sufficiently serious" medical need, courts in this circuit have considered a variety of factors, including whether "a reasonable doctor or

---

[1] I note that Giraud may not seek prospective injunctive relief from defendants sued only in their individual capacities because those defendants would not have authority to authorize the requested relief unless acting in their official capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011).

patient would find [it] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (internal citations omitted). A medical condition that is not initially serious may meet the standard where, left untreated, the condition could "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000).

In addition to alleging a sufficiently serious medical need, a plaintiff must allege that the charged medical provider or official acted with deliberate indifference, or "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Brock*, 315 F.3d 158 at 164. Although a plaintiff must allege that the defendant had actual knowledge of the risk, "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient." *Id*. Deliberate indifference, however, requires more than mere negligence; it is instead a mental state equivalent to "subjective recklessness, as the term is used in criminal law." *Salahuddin* , 467 F.3d at 280. Accordingly, allegations that sound in medical malpractice are insufficient to establish deliberate indifference. "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Medical malpractice, however, may rise to the level of deliberate indifference if it "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of harm." *Chance*, 143 F.3d 698 at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

1. **Inadequate Medical Care**

### A.     Serious Medical Need

Giraud has alleged that he has experienced severe and continuous pain and swelling in his leg since he sustained the original injury playing basketball. The pain and swelling are extreme enough that he has trouble standing, walking, lifting, bending, working and sleeping. Compl. Doc. No. 1 at ¶ 29. He additionally alleges that, without treatment, he is at risk of developing a permanent disability. *Id.* at ¶ 31. Allegations of substantial, chronic pain that interfere with walking, sleeping and routine daily activities, as well as allegations that, without treatment, Giraud is at risk of developing a permanent disability are sufficient to establish the existence of a sufficiently serious condition for purposes of the Eighth Amendment.

### B.     Deliberate Indifference[2]

#### i.     Dr. Feder

It is not clear from the complaint whether Dr. Feder ever examined Giraud. She did, however, review X-Rays of his right leg and initially told him that his leg injury did not require medical intervention. *Id.* at ¶ 13. When Giraud wrote again to the medical department to indicate that he was continuing to experience severe pain, swelling and difficulty walking, Dr. Feder again told him nothing was wrong with his leg. *Id.* However, two weeks later, she notified Giraud that her diagnosis had changed and she now suspected that Giraud may have torn a muscle or tendon in his right leg that might require surgery. *Id.* at ¶ 16.

Allegations that Dr. Feder initially relied on only an X-Ray in diagnosing Giraud's condition and therefore misdiagnosed the issue are more akin to the allegations of medical

---

[2] I note that Giraud additionally appears to raise claims against the medical providers who initially examined him. Compl. Doc. No. 1 at ¶ 20. He does not identify any of those providers individually, however, referring to them only in general terms as "medical staff." Because he has failed to provide any information regarding which additional medical providers he seeks to sue, I do not construe those allegations as raising additional claims.

8

malpractice rejected as a basis for an Eighth Amendment claim in *Estelle*. There, the Court held that although more tests to properly diagnose the plaintiff's painful lower back condition might have been appropriate, "the question whether an X-ray - or additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." 429 U.S. at 107. Accordingly, allegations regarding Dr. Feder's initial failure to provide more than an X-Ray or adequately diagnose Giraud's condition do not establish deliberate indifference.

However, Giraud has additionally alleged that Dr. Feder changed her diagnosis and indicated that she suspected that Giraud may have torn a tendon and would require an MRI to determine whether surgery was required. Despite that diagnosis, she failed to follow up to ensure that he received an MRI or further treatment. When Giraud wrote again to the medical department to inquire about the wait time for an MRI and indicated that he was still experiencing constant pain in his leg despite the Gabapentin, he received no response or further treatment. Those allegations are sufficient, for purposes of initial review, to evince deliberate indifference to serious medical needs. *See, e.g., Lloyd v. Lee,* 570 F. Supp. 2d 556, 569 (S.D.N.Y. 2008) (allegations that doctors failed to follow up to ensure that plaintiff received an MRI sufficient to state a claim for deliberate indifference where plaintiff experienced "extreme pain and loss of mobility"); *Williamson v. Naqvi*, 2019 U.S. Dist. LEXIS 107394, at *16 (D. Conn. June 27, 2019) ("to the extent that [the defendant]…thought an MRI was medically necessary…but failed to facilitate or arrange for the MRI, the plaintiff has stated a claim for deliberate indifference to medical needs"); *Price v. Reilly*, 697 F. Supp. 2d 344, 364 (E.D.N.Y. 2010) (["t]he fact that

9

defendants offered some treatment in response to plaintiff's complaints does not as a matter of law establish that they had no subjectively culpable intent."). Accordingly, the deliberate indifference claim will proceed against Dr. Feder in her individual capacity.[3]

        ii.      <u>Nurse Brennan</u>

Giraud contends that Nurse Brennan was deliberately indifferent to the serious injury to his right leg when she improperly determined that his administrative remedy form did not raise an issue regarding diagnosis or treatment and therefore was not a proper subject for an administrative remedy request. Giraud contends that by improperly denying the request, Brennan further delayed his access to medical care in violation of the Eighth Amendment.

The State of Connecticut Department of Correction Administrative Directive 8.9 governs the administrative remedies available to incarcerated individuals seeking review of a medical diagnosis or treatment, including a decision to provide no treatment. *See* State of Connecticut Department of Correction Administrative Directive 8.9 (2012), *available at* https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0809pdf.pdf. The Second Circuit, however, has held that neither state directives nor "state statutes…create federally protected due process entitlements to specific state-mandated procedures." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003). Accordingly,

---

[3] It is not clear from the face of the complaint whether Giraud properly exhausted the available administrative remedies provided by State of Connecticut Administrative Directive 8.9 (Administrative Remedy for Health Services) prior to filing suit as required by 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." (quoting 42 U.S.C. §1997e(a)). Giraud states that in June 2020, he filed an administrative remedy request to challenge the misdiagnosis of his knee injury, the adequacy of the treatment that he had received and the delay in scheduling his MRI; however, Nurse Brennan returned the request to him without disposition because it did not seek relief for an improper diagnosis or a denial of treatment. It is unclear whether Brennan informed Giraud that he could re-file the grievance as a challenge to an administrative issue under Administrative Directive 8.9 (12) or whether Brennan's response suggested that there was no administrative remedy available for a delay in scheduling a diagnostic test. Because it is not clear from the face of the complaint that Giraud did not fully exhaust his administrative remedies with regard to the claim for deliberate indifference to medical needs and I do not yet have enough information about whether Giraud might be excused from exhausting those remedies because no remedy was available to him, I will not dismiss the action at this state of

allegations that a prison official violated the procedures set forth in a state's administrative remedy program for inmate grievances do not, without more, establish a violation of an inmate's constitutional rights. *See Swift v. Tweddell,* 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008) ("[i]t is well established [ ] that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim.") (collecting cases); *Fernandez v. Armstrong*, 2005 WL 733664, at *9 (D. Conn. Mar. 30, 2005) ("This district has previously held that failure of a correctional official to comply with the institutional grievance procedures [set forth in Administrative Directive 9.6] is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right.").

Accordingly, allegations that Nurse Brennan violated the proper administrative grievance procedures are insufficient to state a violation of constitutional rights. Although Giraud has additionally stated that Nurse Brennan's improper processing of his administrative remedy form contributed to a deprivation of adequate medical care in violation of the Eighth Amendment, he sets forth no facts to support the claim that her actions had any bearing on the failure of medical providers to afford Giraud an MRI, appointment with an orthopedist or additional treatment. Conclusory allegations that the return of his form without disposition contributed to the delay in care are insufficient to establish a violation of the Eighth Amendment. Accordingly, the claim arising from the alleged improper processing of Giraud's medical grievance by Nurse Brennan is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

    iii.    <u>Warden Martin</u>

Giraud sets forth no facts alleging that Martin was aware of his medical condition or contributed personally to the delays and denial of care that Giraud experienced. Instead, he alleges that in his role as warden, Martin was responsible for providing inmates with adequate medical care. By failing to ensure that there were enough medical providers to adequately provide treatment to individuals incarcerated at Corrigan, Martin was deliberately indifferent to Giraud's serious medical needs in violation of the Eighth Amendment.

The Second Circuit recently addressed the requirements for claims of supervisory liability under section 1983, holding that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Accordingly, to establish an Eighth Amendment violation, Giraud must plead that Martin "acted with deliberate indifference—meaning that [the defendant] personally knew of and disregarded an excessive risk to [Giraud's] health or safety." *Id.* at 619 (internal citations omitted).

Giraud alleges only that Martin was grossly negligent by failing to hire adequate and knowledgeable medical staff members. Compl. at ¶ 30. Moreover, he has not alleged any facts indicating that Martin was even aware of the issues that Giraud faced in obtaining efficient or effective treatment for the injury to his leg. *Id.* Accordingly, Giraud has failed to establish that Martin personally knew of and disregarded a risk to his health or safety. The claims against Martin in his individual and official capacities are therefore dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**2.    Denial of Access to Medical Care**

Giraud additionally appears to allege that he was housed in a restrictive housing unit at Corrigan-Radgowski, and that increased security measures in that unit have limited his access to medical care in violation of the Eighth Amendment. Compl. at ¶ 28. However, he sets forth no additional facts to support that allegation, nor does he indicate elsewhere in the complaint that the delay or denial of access to adequate medical care was related to his placement in a restrictive housing unit. Accordingly, he has not stated a cognizable claim for denial of access to medical care due to his placement in a restrictive housing unit. The claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).[4]

### C. State Constitutional Claim

Giraud contends that the defendants were deliberately indifferent to his medical needs in violation of Article First Section 9 of the Connecticut Constitution. That section provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const. art. 1, § 9.

In *Binnette v. Sabo*, 244 Conn. 23, 41-47 (1998), the Connecticut Supreme Court relied on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to recognize a private cause of action for monetary damages against municipal police officers for violations of Article First, §§ 7 and 9 of the Connecticut Constitution that arose out of an alleged unreasonable search and seizure and unlawful arrest of the plaintiff. In reaching its decision, the Connecticut Supreme Court emphasized the narrowness of that remedy, noting "our

---

[4] Giraud also includes an allegation that on June 23, 2020, another inmate was seen by a medical provider immediately following an injury and was then transported to a hospital on June 24, 2020 and again on June 26, 2020. *See* Compl. at ¶ 17. He contends that "it is wrong to discriminate against one inmate in denying and delaying treatment of one and then treating another." *Id.* I do not construe those allegations as an equal protection claim, because they are not asserted against any of the defendants and Giraud does not appear to refer to them in his summary of his legal claims.

13

decision to recognize a Bivens-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Binette*, 244 Conn. at 47. Instead, the Court held that "[w]hether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis." *Id.* at 48.

The Connecticut Supreme Court has yet to recognize a private cause of action for money damages under Article First, Section 9 of the Connecticut Constitution in the context of a claim for deliberate indifference to the serious medical needs of an inmate confined at a state prison facility. *See Torres v. Armstrong*, 2001 WL 1178581 (Conn. Super. Ct. Sept. 6, 2001) (narrowly construing *Binette* in a civil action asserting claims of violations of an inmate's rights and declining to recognize inmate's claims for money damages and injunctive relief brought directly under Article First Sections 1, 4, 8, 9, 14 and 20 of the Connecticut Constitution); *see also Harnage v. Shari,* 2019 U.S. Dist. LEXIS 226648, at *17 (D. Conn. Dec. 3, 2019) ("although the Connecticut Supreme Court created a cause of action under Article First, §§ 7 and 9 for a Bivens-type claim, it has not applied § 9 in the context of a prisoner case involving a claim for deliberate indifference to a prisoner's serious medical need").

Because the Connecticut Supreme Court has yet to recognize a private cause of action for money damages for violations of Article First, Section 9 in the context of a claim for deliberate indifference to an incarcerated individual's serious medical need, adjudicating the claim would necessarily raise novel or complex issues of state law. Accordingly, I decline to exercise supplemental jurisdiction over Giraud's state constitutional claim. See 28 U.S.C. § 1367(c)(1); *see also Seabrook v. Jacobson*, 153 F. 3d 70, 72 (2d Cir. 1996) ("[w]here a pendent state claim

14

turns on novel or unresolved questions of state law…principles of federalism and comity may dictate that these questions be left for decision by the state courts.").

### IV. Conclusion

The Eighth Amendment claim seeking monetary damages from Dr. Feder in her official capacity is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The Eighth Amendment claims asserted against Nurse Brennan in connection with her decision to return Giraud's medical grievance without disposition and the Eighth Amendment deliberate indifference claim asserted against Warden Martin are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The claim regarding security measures implemented in the restrictive unit is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). I decline to exercise supplemental jurisdiction over the claim asserted under Article First, § 9 of the Connecticut Constitution. *See* 28 U.S.C. § 1367(c). The Eighth Amendment claim for deliberate indifference to serious medical needs will proceed against Dr. Ingrid Feder in her individual and official capacities.

The court enters the following additional orders.

**(1)** Within twenty-one (21) days of this Order, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshals Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint, and a copy of this order on Dr. Ingrid Feder in her official capacity by delivering the necessary documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06160.

**(2)** The Clerk shall verify the current work address of Dr. Ingrid Feder and mail a copy of the complaint, this order, and a waiver of service of process request packet to Dr. Feder in her individual capacity at her confirmed address. On the thirty-fifth (35th) day after mailing,

15

the Clerk shall report to the Court on the status of the request. If Dr. Feder fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and Dr. Feder shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendant Feder shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to Defendant Feder. If Defendant Feder chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order. Discovery requests need not be filed with the Court.

**(5)** All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

**(6)** If Giraud changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Giraud MUST notify the Court. Failure to do so can result in the dismissal of the case. Giraud must give notice of a new address even if he is incarcerated. Giraud should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Giraud has more than one pending case, he should indicate all case numbers in the notification of change of address. Giraud should also notify the defendants or the attorney for the defendants of his new address.

**(7)** Giraud shall utilize the Prisoner Efiling Program when filing documents with the Court.  Giraud is advised that the Program may be used only to file documents with the Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on the defendant's attorney by regular mail.

**(8)** The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(9)** The Clerk shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit

SO ORDERED.

Dated at Bridgeport, Connecticut, this 19th day of April 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge