UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RASHEEN GIRAUD,
    Plaintiff,

v.

INGRID FEDER, et al.,
    Defendants.

No. 3:20-cv-1124 (SRU)

**RULING AND ORDER**

Rasheen Giraud, proceeding *pro se*, has filed a motion for a temporary restraining order against two correctional officers at Cheshire Correctional Institution ("Cheshire").

For the following reasons, the motion is **denied.**

I. Standard of Review

In the Second Circuit, the same legal standard governs motions for a temporary restraining order and a preliminary injunction. *Local 1814, International Longshoremen's Assn. v. New York Shipping Assn.*, 965 F.2d 1224, 1228 (2d Cir. 1992). Preliminary injunctive relief is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted). To demonstrate that such relief is warranted, a movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S.863, 876 (2015) (cleaned up). Irreparable harm is harm "that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman*

*Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (cleaned up). A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983).

If a moving party seeks a mandatory injunction, or a form of relief that will "alter[] the status quo by commanding some positive act", he or she must meet a heightened standard. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (cleaned up); *see also Demirayak*, 746 F. App'x at 51 ("A heightened standard applies when a movant seeks a preliminary injunction that either alters the status quo or would provide the ultimate relief sought in the underlying action.") (citation omitted). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from the denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citation omitted).

The nature of the relief sought in a mandatory injunction must additionally relate to the claims raised in the underlying action. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Torres v. UConn Health*, 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying claims in complaint); *Oliphant* v. *Quiros*, 2010 U.S. Dist. LEXIS 50046, at *5-6 (D. Conn. May 18, 2010) (same).

Although a district court should ordinarily conduct an evidentiary hearing prior to deciding a motion for preliminary injunctive relief, the Second Circuit has clarified that "there is no hard and fast rule in this circuit that oral testimony must be taken on a motion for

a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Md. Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979, 984 (2d Cir. 1997) (cleaned up); *see also Charette v. Town of Oyster Bay,* 159 F.3d 749, 755 (2d Cir. 1998) ("An evidentiary hearing is not required when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case…or when the disputed facts are amenable to complete resolution on a paper record"); *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) ("The existence of factual disputes necessitates an evidentiary hearing…before a motion for a preliminary injunction may be decided.") (cleaned up).

II. <u>Factual Background</u>

On March 25, 2021, Giraud was called to the property room to retrieve some of his property. Pl.'s Mot. Doc. No. 20 at 1. When Giraud arrived at the property room, he realized that his fan, game console and boom box were broken. *Id.* Giraud asked the property officer, Officer Goncalves, why all of his property was broken and who would pay for it to be fixed. *Id.* Officer Goncalves told Giraud he should "[b]uy a new one with your law suit[] money." *Id.* Giraud asked Officer Goncalves how she knew about his pending lawsuit, but she refused to answer. *Id.*

On May 10, 2021 Giraud wrote to Unit Manager Manick to report Officer Goncalves' behavior. *Id.* at 2. It was the third time he had written to Unit Manager Manick about the property issue. *Id.* Giraud asked to send out his broken property for repair at his own expense. *Id.* Unit Manager Manick refused to respond to Giraud in writing but told Giraud in person that he could not send out his property; he should instead buy new belongings with money from his lawsuit. *Id.*

On April 15, 2021, Giraud was sent to UConn Hospital to see a specialist and have an MRI done of his leg. *Id.* at 3. On April 27, 2021, Giraud was seen by doctors at Cheshire

Correctional Institution. *Id.* He was given a walking cane and a paper with various physical therapy exercises that would help heal his injured leg. *Id.* The paper did not specifically provide how frequently Giraud should do the exercises, nor did it specify how his leg was supposed to feel during the exercises. *Id.* Giraud returned to UConn on April 30, 2021 to see Dr. Dwyer, a specialist, who informed him that he would need to do physical therapy and likely would also need surgery. *Id.*

III. <u>Discussion</u>

Giraud seeks an order directing the defendants to move him to a facility that will provide him proper medical treatment to further his recovery. Specifically, Giraud requests that he be transferred to MacDougall-Walker Correctional Institution ("MacDougall") so that he can receive physical therapy twice a week with a therapist trained to assist him. Giraud additionally maintains that if he is transferred to MacDougall, he will no longer be subject to the harassment and threats he is currently experiencing at Cheshire. In the alternative, Giraud asks that I enter an order directing that the named offices have no further contact with him while he is at Cheshire.

In his original complaint in this case, Giraud raised claims against three officials—Dr. Ingrid Feder, Nurse Janine Brennan and Warden Martin—relating to denial of access for medical care for a serious injury that he sustained to his right calf while incarcerated at Corrigan-Radgowski Correctional Center. Compl. Doc. No. 1. After I issued an initial review order dismissing the claims against Brennan and Martin, Giraud moved to amend the complaint to reassert claims against Brennan and Martin and to add Commissioner Rollin Cook, Nurse Kayla and Nurse G. Ballabani to the action. Am. Compl. Doc. No. 14. In his motion for a temporary restraining order, Giraud seeks a restraining order for events that occurred at Cheshire and involved two different correctional officers: Unit Manager Manick and Officer Goncalves.

4

Because the relief Giraud requests in his motion for a temporary restraining order is therefore unrelated to the underlying claims in Giraud's complaint or proposed amended complaint, the motion is not properly brought in this action. To the extent that Giraud seeks to obtain a temporary restraining order or preliminary injunctive relief against Unit Manager Manick or Officer Goncalves, he may do so by filing a separate action and reasserting the facts he has alleged here.

IV. Conclusion

For the foregoing reasons, Giraud's motion for a temporary restraining order is **denied**. He is free to file a motion for a temporary restraining order or preliminary injunction against Unit Manager Manick and Officer Goncalves in a separate action.

So ordered.

Dated at Bridgeport, Connecticut, this 25th day of June 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge