UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RASHEEN GIRAUD,<br>　　　Plaintiff,<br><br>　　　v.<br><br>INGRID FEDER, et al.,<br>　　　Defendants. | No. 3:20-cv-1124 (SRU) |

### INITIAL REVIEW ORDER ON AMENDED COMPLAINT

Rasheen Giraud, proceeding *pro se*, originally filed this action on August 7, 2020, bringing claims against various officials associated with the Connecticut Department of Correction ("DOC") including: Dr. Ingrid Feder, Nurse Janine Brennan and Warden Martin. In his complaint, Giraud generally alleged that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the United States Constitution and Article First, Section 9 of the Connecticut Constitution during the period he was incarcerated at Corrigan-Radgowski Correctional Center ("Corrigan"). *See generally* Compl., Doc. No. 1.

On April 19, 2021, I conducted an initial review of Giraud's complaint pursuant to 28 U.S.C. § 1915A. In that order, I dismissed all claims except the Eighth Amendment claim raised against Dr. Feder. *See* Initial Review Order, Doc. No. 10. Because Giraud sought both money damages and injunctive relief, I permitted that claim to proceed against Dr. Feder in both her official and individual capacities. *Id.* Giraud subsequently filed this motion for leave to amend his complaint. For the reasons set forth below, Giraud may amend the complaint as a matter of right. However, the amended complaint is **dismissed** in part.

1. **Motion to Amend the Complaint**

Giraud seeks leave to file an amended complaint to include additional information that he discovered after visiting the library. Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within "21 days after serving it" or, "if the pleading is one to which a responsive pleading is required, [within] 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12." Fed. R. Civ. P. 15(a)(1). Here, although Giraud filed the amended complaint more than 21 days after service, he did so before the defendants filed their answer. Accordingly, Giraud may amend the complaint as a matter of course. *See, e.g., Doe v. Syracuse Univ.,* 335 F.R.D. 356, 359 (N.D.N.Y. 2020) (collecting cases in support of the proposition that a party may amend a complaint as a matter of course before the defendant files a response).

**2.    Amended Complaint**

In his amended complaint, Giraud brings claims against Warden Martin, Commissioner Rollin Cook, Dr. Ingrid Feder, RN Janine Brennan, RN Kayla, RN G. Ballabani, and RN K. Phillips. He generally alleges that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the United States Constitution, and Article First, Section 9 of the Connecticut Constitution.

**I.    Standard of Review**

Under section 1915A of Title 28 of the United States Code, a district court must review civil complaints (including amended complaints) filed by incarcerated individuals and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. That standard of review "applies to all civil complaints brought by prisoners

against governmental officials or entities regardless of whether the prisoner has paid a filing fee." *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999)).

Although detailed allegations are not required in order to survive initial review, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, it is well-established that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (cleaned up); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**II.     Facts**

On February 15, 2020, Giraud injured his right leg while playing basketball. Am. Compl., Doc. No. 14 at ¶ 2. Giraud immediately returned to his housing unit and asked the unit officer to call the medical department so that he could be provided medical attention. *Id.* at ¶ 3. The unit officer told Giraud that he should write a request to the medical department. *Id*. Giraud followed his instructions and wrote a request to the medical department requesting to have his leg examined. *Id.; see also* Pl.'s Ex. 2.

On February 19, when Giraud had yet to be seen by a medical provider, he wrote again to the medical department. *Id.* at ¶ 4.; *see also* Pl.'s Ex. 3. On February 26, when he had still not received treatment, Giraud wrote a third request to the medical department. *Id.* at ¶ 5; *see also*

Pl.'s Ex. 4. In that request, Giraud requested that an X-Ray be performed to determine the source of the pain he was experiencing. *Id.*

At some point after filing a third request, Giraud was seen by a medical provider. *Id.* at ¶ 6. The medical provider prescribed him 600 milligrams of ibuprofen and advised him that an MRI would be scheduled to examine a bump that had developed on his injured leg. *Id.*

On March 25, when he had not yet been scheduled for an MRI, Giraud wrote the medical department again about the bump on his leg. *Id.* at ¶ 7; *see also* Pl.'s Ex. 5. In that request, Giraud indicated that he was still experiencing pain in his leg and ibuprofen had not addressed the issue. *Id.* In response to that request, Giraud was informed that he would be placed on the sick-call list. *Id.*

On May 7, Giraud wrote again to the medical department regarding the continued swelling, pain and bump that had developed on his leg. *Id.* at ¶ 8; *see also* Pl.'s Ex. 6. On May 20, Giraud received a notification from Dr. Feder informing him that nothing was wrong with his leg and that no further medical intervention was necessary. *Id.* at ¶ 9; *see also* Pl.'s Ex. 7.

On May 22, Giraud wrote the medical department again to address the misdiagnosis and delay in treatment. *Id.* at ¶ 10; *see also* Pl.'s Ex. 8. He explained that he had never been afforded the promised MRI, and that his leg remained swollen and painful. *Id.* On May 29, Giraud received a second notification of test results from Dr. Feder again stating that nothing was wrong with his leg. *Id.* at ¶ 11; *see also* Pl.'s Ex. 9.

On June 12, however, Giraud received a third notification of test results from Dr. Feder. *Id.* at ¶ 12. In that notification, Dr. Feder indicated that she now suspected that Giraud had a torn muscle or tendon in his lower leg that needed to be reattached. *Id.* She additionally prescribed

Gabapentin for Giraud to take at night because she suspected that the injury had affected the nerves in Giraud's leg. *Id.* at ¶ 12.

On July 9, Giraud wrote to the medical department to inform then that the Gabapentin was not ameliorating his pain. *Id.* at ¶ 13; *see also* Pl.'s Ex. 11. He received a reply from Dr. Feder indicating that she had increased his Gabapentin dosage and additionally prescribed a new medication (Celebrex) for Giraud to try. Pl.'s Ex. 11.

On July 22, Giraud wrote to the medical department because his medication had been discontinued and he was still experiencing pain. *Id.* at ¶ 14; *see also* Pl.'s Ex. 12. On October 3, Giraud wrote the medical department a third time because he still had not been afforded medical attention or an MRI. *Id.* at ¶ 15; *see also* Pl.'s Ex. 13. He received a reply from RN Kayla indicating that he had been placed on the sick-call list. Pl.'s Ex. 13.

On October 26, 2020, Giraud received a notification of test results from Dr. Feder indicating that he had been placed back on Gabapentin and that the dosage had been increased from 300 to 400 milligrams despite the fact that Giraud had informed her that the Gabapentin was not addressing his pain. *Id.* at ¶ 16; *see also* Pl.'s Ex. 14. On December 7, 2020, Giraud wrote to the medical department again to follow up regarding the MRI. *Id.* at ¶ 17. He additionally explained that the Gabapentin was not helping his pain. *Id.* In response, he was told by RN Kayla that he would be added to the sick-call list. *Id.; see also* Pl.'s Ex. 15.

On December 12, 2020, Giraud wrote again to the medical department because an MRI had yet to be performed. *Id.* at ¶ 18; *see also* Pl.'s Ex. 16. He received a reply from Dr. Feder indicating that, due to the pandemic, all non-emergency issues had been postponed, but that both an MRI and orthopedics consult had been requested. Pl.'s Ex. 16.

On February 13, 2021, Giraud submitted an inmate request explaining that the pain in his leg was so excruciating that he was struggling to walk. *Id.* at ¶ 19; *see also* Pl.'s Ex. 17. Accordingly, he requested that he be provided with crutches or another device to help him walk on his injured leg. *Id*. RN Ballabani replied to his request and informed him that an MRI had been scheduled, but that the date and time could not be disclosed due to "safety and security." Pl.'s Ex. 17.

On February 22, Giraud wrote to the unit counselor to express the fact that he still had not received an MRI and that he felt that he was being discriminated against. *Id.* at ¶ 20; *see also* Pl.'s Ex. 18. On March 4, 2021, Giraud wrote again to the medical department because he had yet to be seen by a doctor. *Id.* at ¶ 21; *see also* Pl.'s Ex. 19. In response, he received a notification from RN Phillips indicating that he was on the list to see a provider. *Id.*

As of April 4, 2021, when Giraud signed his complaint, he had still not received the promised MRI. Pl.'s Ex. 1 at ¶ 26.

### III.    Discussion

Giraud contends, as he did in his original complaint, that Nurse Brennan exhibited deliberate indifference in violation of the Eighth Amendment by returning a grievance Giraud filed without disposition (further denying him access to medical care)[1]; that Warden Martin violated the Eighth Amendment and Article 1, Section 9 of the Connecticut Constitution by failing to ensure that medical staff afforded Giraud timely and adequate medical treatment; and

---

[1] Giraud also appears to indicate that Nurse Brennan violated the provisions of the Equal Protection Clause by returning his grievance. However, he includes no facts from which I can conclude that "he was treated differently from other similarly situated individuals and that the reason for this different treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Green v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. 2016) (cleaned up).

that Dr. Feder failed to afford him adequate medical treatment in violation of the Eighth Amendment and Article 1, Section 9 of the Connecticut Constitution.

In his amended complaint, however, Giraud increases his request for damages, seeking $500,000.00 in compensatory damages and $500,000.00 in punitive damages against each defendant in their official and individual capacity. He additionally includes a request for declaratory relief and multiple requests for preliminary and permanent injunctive relief. Finally, Giraud seeks to add four new defendants to the action: Commissioner Rollin Cook; RN Kayla, RN Ballabani, and RN Phillips.

1.      **Eighth Amendment Claim – Money Damages**

As an initial matter, for the reasons explained in my initial review order, to the extent that Giraud seeks to bring claims for money damages against defendants named in their official capacities, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court...[t]his bar remains in effect when state officials are sued for damages in their official capacity"); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that Section 1983 does not abrogate a state's sovereign immunity). Accordingly, any claims for money damages raised against the defendants in their official capacities are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

With respect to the claims raised against Warden Martin, Dr. Feder and Nurse Brennan in their individual capacities, the allegations in the amended complaint are very similar to the claims that Giraud raised in his original complaint. First, regarding Dr. Feder, Giraud reasserts his claim that she was deliberately indifferent to his serious medical needs by failing to afford him adequate treatment and failing to follow up to ensure that he received an MRI despite

informing him that an MRI was necessary to properly diagnose his injury. In his Amended Complaint, however, Giraud includes additional facts regarding events that occurred throughout the fall and winter of 2020 and 2021. Specifically, he indicates that although he informed Dr. Feder that the prescribed pain medication was not adequately addressing the issue with his leg, she failed to ensure that he was afforded an MRI or to offer different or more effective treatment, and instead simply increased the dosage of the ineffective medication. For substantially the same reasons explained in my Initial Review Order, those allegations are sufficient to demonstrate more than "mere disagreement over the proper treatment" and to suggest instead that Dr. Feder repeatedly failed to afford *adequate* treatment. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Price v. Reilly,* 697 F. Supp. 2d 344, 364 (E.D.N.Y. 2010) (["t]he fact that defendants offered some treatment in response to plaintiff's complaints does not as a matter of law establish that they had no subjectively culpable intent."). Accordingly, the Eighth Amendment claim raised against Dr. Feder in her individual capacity will proceed for further development of the factual record.

With respect to Warden Martin and Nurse Brennan, however, Giraud asserts no facts that would alter my original conclusion that the claims raised against those defendants were not cognizable. Accordingly, to the extent that Giraud intends to reassert claims against those defendants, the claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

In his amended complaint, Giraud additionally names RN Kayla, RN Ballabani, and RN Phillips as defendants. However, he includes no facts in the body of the complaint to indicate which claims are raised against those defendants. Although it appears from the exhibits he includes that RN Kayla, RN Phillips, and RN Ballabani responded to certain of his inmate requests by noting that he would be placed on the sick-call list or informing him that an MRI had

8

been scheduled, those responses alone do not demonstrate that the defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Accordingly, the claims against RN Phillips, RN Kayla, and RN Ballabani are dismissed. *See* 28 U.S.C. § 1915A(b)(1). To the extent that Giraud possesses additional facts demonstrating that those defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, he may amend the complaint a second time to include those facts.

With respect to Commissioner Cook, to the extent that Giraud seeks to impose liability under section 1983, he may not merely rely on Commissioner Cook's role as a supervisory official but must instead set forth facts demonstrating personal involvement in a constitutional violation in order to state a cognizable claim. *See, e.g., Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020). Because Giraud sets forth no facts from which I can conclude that Commissioner Cook was personally involved in a deprivation of medical care, the claim against Commissioner Cook is dismissed. *See* 28 U.S.C. § 1915A(b)(1). To the extent that Giraud possesses additional facts that would demonstrate personal involvement by Commissioner Cook in the events described in the complaint or amended complaint, he may include those facts in a second amended complaint.

**2.  Eighth Amendment Claim – Declaratory Relief**

Giraud additionally seeks a declaration that the defendants violated his rights under the Eighth Amendment. Am. Compl., Doc. No. 19 at 41. To the extent that Giraud seeks declaratory relief against the defendants in their official capacities, the Eleventh Amendment does not "permit judgments against state officers declaring that they violated federal law in the *past.*" *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (emphasis added); *see*

*also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*…to claims for retrospective relief."). Because Giraud's request for declaratory relief is addressed only to events that took place between February 2020 and March 2021, the request is barred under the Eleventh Amendment and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Moreover, to the extent that Giraud seeks declaratory relief against the defendants in their individual capacities, the issue of whether the defendants violated Giraud's rights under the Eighth Amendment will "necessarily be resolved…in connection with the resolution of [Giraud's] damage claims." *Ruggiero v. Fischer*, 2017 U.S. Dist. LEXIS 138240, at *10 (W.D.N.Y. Aug. 25, 2017). A separate declaration to that effect would therefore serve "no useful purpose." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Accordingly, the request for a declaratory judgment is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**3.    Eighth Amendment – Injunctive Relief**

Giraud additionally seeks various forms of preliminary and permanent injunctive relief in his complaint, including: a preliminary and permanent injunction order the defendants to afford him proper medical treatment; a sneaker pass; a single cell; an air mattress; supersonic LED HD TV; a Lakewind fan; an RCA Anti 450 Amplified UHV Indoor Antenna; a security console; and a replacement for his broken game console. Am. Compl., Doc. No. 14 at 7-8.

Preliminary injunctive relief is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005)). To demonstrate that such relief is warranted, a movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). Irreparable harm is harm "that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983) (cleaned up). The nature of the injunctive relief sought must additionally relate to the claims raised in the underlying action. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Torres v. UConn Health*, 2017 U.S. Dist. LEXIS 138366 at *4 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying claims in complaint); *Oliphant v. Quiros*, 2010 U.S. Dist. LEXIS 50046, at *5-6 (D. Conn. May 18, 2010) (same).

As an initial matter, Giraud was transferred to Cheshire Correctional Institution ("Cheshire") on March 29, 2021. *See* Not. of Change of Address, Doc. No. 9. Accordingly, it appears that any claims for injunctive relief relating to the denial of access of medical care by Dr. Feder are moot.[2] *See Booker v. Graham*, 974 F.3d 101, 107 (2d Cir. 2020) ("'In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'") (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d

---

[2] Arguably, the claims for injunctive relief were moot at the time the Initial Review Order was filed. However, because Giraud's initial claims for injunctive relief were fairly broad in scope, it was difficult to determine at first blush whether an exception to the mootness doctrine might apply. Accordingly, I initially permitted those claims to proceed.

11

Cir. 2006)). Although there "exists an exception to the mootness doctrine for circumstances which are 'capable of repetition, yet evading review'", that exception "will not be applied unless '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Muhammad v. City of New York Dep't of Corr.*, 126 F.3d 119, 123 (2d Cir. 1997) (quoting *Murphy v. Hunt,* 455 U.S. 478, 482 (1982)) (cleaned up).

In the case at bar, Giraud includes no facts in the Amended Complaint that would suggest that an exception to the mootness doctrine applies.[3] Because Giraud has not yet had an opportunity to address that issue, however, I will permit him to amend the complaint a second time to address the issue of mootness with respect to his claims for injunctive relief. If he fails to demonstrate that the claims for injunctive relief are not moot, however, the request for injunctive relief relating to the denial of access for medical care will be dismissed. *See* 28 U.S.C. § 1915A(b)(1). To the extent that claims for injunctive relief are dismissed, Giraud's claim against Dr. Feder in her official capacity will also be dismissed, because no claim for prospective injunctive relief would therefore remain in the suit. *See, e.g., Ex Parte Young*, 209 U.S. 123 (1908); *see also CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs*., 306 F.3d 87, 98 (2d Cir. 2002) (affirming that injunctive relief sought must be prospective in nature in order to fall within the scope of the Eleventh Amendment's bar against official capacity suits).

Finally, Giraud's requests for injunctive relief seeking a wide variety of items (including a television and an air mattress) are not reasonably related to claims raised in the original or amended complaint. Accordingly, those requests are dismissed under 28 U.S.C. § 1915A(b)(1).

---

[3] I note that the possibility that Giraud might again be transferred to Corrigan and again receive care (or lack thereof) from Dr. Feder is simply too speculative to fall within the scope of the exception for mootness. *See Booker,* 974 F.3d at 107 (rejecting the notion that the mere possibility that an individual might be transferred back to a particular facility would suffice to demonstrate that a claim against officials at that facility was not moot).

5. **Claims under the Connecticut Constitution**

In his amended complaint, Giraud additionally reasserts his claim that certain of the defendants violated Article First, § 9 of the Connecticut Constitution. In my previous order, I determined that adjudicating that constitutional claim would raise novel or complex issues of state law. Giraud includes no facts in his amended complaint that would alter my conclusion that the exercise of supplemental jurisdiction over that claim would not be appropriate, and the claim is therefore dismissed without prejudice. *See* 18 U.S.C. § 1915A(b)(1).

## IV. Conclusion

For the foregoing reasons, the amended complaint is **dismissed** in part.

**It is hereby ordered that:**

**(1)** **The Clerk is directed to terminate the motion to amend and docket the Amended Complaint attached to the motion as the operative Complaint.** Pursuant to my initial review order, the claims seeking monetary damages against the defendants in their official capacities are **DISMISSED**. For the reasons explained above, the requests for injunctive relief and the requests for declaratory relief are **DISMISSED** under 28 U.S.C. § 1915A(b). To the extent that Giraud possesses additional facts demonstrating that his claims for injunctive relief are not moot, he may file a second amended complaint including those facts.

The claims for money damages against RN Kayla, RN Ballabani, RN Phillips, and Commissioner Cook are **DISMISSED WITHOUT PREJUDICE.** To the extent that Giraud possesses additional facts that would support a cognizable claim against those defendants, he may amend the complaint to include those facts.

I decline to exercise supplemental jurisdiction over the claim seeking monetary damages for a violation of Article First, § 9 of the Connecticut Constitution and **DISMISS** that claim

without prejudice. *See* 28 U.S.C. § 1367(c). For substantially the same reasons explained in my initial review order, the Eighth Amendment claim raised against Dr. Feder in her individual capacity will proceed.

(2)     Dr. Feder shall file a response to the amended complaint, either an answer or motion to dismiss, within twenty (20) days from the date of this order

(3)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed on or before November 18, 2021. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court.

(4)     All motions for summary judgment shall be filed on or before December 18, 2021.

(5)     If Giraud changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Giraud MUST notify the Court. Failure to do so can result in the dismissal of the case. Giraud must give notice of a new address even if he is incarcerated. Giraud should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Giraud has more than one pending case, he should indicate all case numbers in the notification of change of address. Giraud should also notify the defendant or the attorney for the defendant of his new address.

(6)     Giraud shall continue to utilize the Prisoner Efiling Program when filing documents with the Court. Giraud is advised that the Program may be used only to file documents with the Court. Because Local Rule 5(f) prohibits the filing of discovery requests with the Court, Giraud must serve all discovery requests on defendant's attorney by regular mail.

(7)     Any amended complaint shall be filed within **21 days of this order.**

So ordered.

Dated at Bridgeport, Connecticut, this 2nd day of November 2021.

/s/ STEFAN R. UNDERHILL<br>
Stefan R. Underhill<br>
United States District Judge